IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EL RIO SOL TRANSMISSION, LLC,

      Plaintiff,

v.                                    No. _____

ADOLFO SANCHEZ, CHRISTINA
SANCHEZ, RED DOC LAND LLC,
SLEEPING INDIAN RANCH LLC, and
SANCTUS LAND LLC,

      Defendants.

**COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT**

      Plaintiff El Rio Sol Transmission, LLC ("El Rio Sol"), by its counsel Modrall, Sperling, Roehl, Harris & Sisk, P.A. (Spencer L. Edelman and Robert W. Curl), brings this Complaint for Breach of Contract and Declaratory Judgment against Adolfo Sanchez, Christina Sanchez, Red Doc Land LLC ("Red Doc"), Sleeping Indian Ranch LLC ("Sleeping Indian Ranch"), and Sanctus Land LLC ("Sanctus") (collectively, "Defendants"), and alleges as follows:

## I.      GENERAL STATEMENT

      In March 2020, Defendants[1] executed agreements with SunZia Transmission, LLC ("SunZia"), granting SunZia the right to perpetual and assignable easements for two electrical transmission lines crossing two separate parcels of Defendants' land. In February 2024, SunZia assigned the easement agreements for the second transmission line to El Rio Sol. Since this assignment, Defendants have repeatedly asserted rights in correspondence with El Rio Sol that are

---

[1] The original grantors under the easement agreements were Adolfo Sanchez, Red Doc, Sleeping Indian Ranch, and Christina Sanchez (joining pro forma). Adolfo Sanchez later conveyed certain interests to Sanctus, as described in more detail herein.

inconsistent with the easements' terms, threatened to cancel the easements, and demanded unreasonable sums that are not supported by any agreement between the parties. These violations have caused and continue to cause damage to El Rio Sol far in excess of the jurisdictional minimum amount.

Moreover, upon information and belief, Defendants have transferred interest in one of the parcels in violation of the purpose of the easements and, despite demand, have refused to cooperate in correcting this action. Defendants have thus breached the covenant of good faith and fair dealing inherent in these contracts. Accordingly, El Rio Sol brings this action for bad faith and for declaratory judgment that Defendants' interpretations of the easements and related agreements are incorrect.

## II.     THE PARTIES

1.      Plaintiff El Rio Sol is a Delaware limited liability company with a sole member, MMR Group, Inc., a corporation that has its principal place of business in and is incorporated in Louisiana.

2.      Upon information and belief, defendant Adolfo Sanchez is a resident of Valencia County, New Mexico.

3.      Upon information and belief, defendant Christina Sanchez is a resident of Valencia County, New Mexico.

4.      Upon information and belief, defendant Sleeping Indian Ranch is a limited liability company formed in New Mexico with a sole member or multiple members, all of whom are citizens of New Mexico.

5.      Upon information and belief, defendant Red Doc is a limited liability company formed in Wyoming with a sole member, who is a citizen of Wyoming.

6.     Upon information and belief, defendant Sanctus is a limited liability company formed in New Mexico with a sole member or multiple members, all of whom are citizens of New Mexico.

### III.     JURISDICTION AND VENUE

7.     The court has subject matter jurisdiction under 28 U.S.C. § 1332.

8.     There is complete diversity of citizenship as to all parties.

9.     The amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

10.     The claims at issue in this action arose in the District of New Mexico, and all Defendants are either citizens of the State of New Mexico or the State of Wyoming.

11.     Venue is proper in this Court under 28 U.S.C. § 1391.

12.     Declaratory relief is requested pursuant to 28 U.S.C. § 2201.

13.     There is an actual justiciable controversy between El Rio Sol and Defendants regarding when El Rio Sol is required to enter into a construction agreement pursuant to the Letter Agreement as set forth in detail below.

14.     There is an actual justiciable controversy between El Rio Sol and Defendants regarding the amount El Rio Sol is required to pay under a construction agreement pursuant to the Letter Agreement as set forth in detail below.

15.     There is an actual justiciable controversy between El Rio Sol and Defendants regarding the meaning of "constructed" under the easement agreements as set forth in detail below.

16.     Consequently, this Court is vested with the power to declare and adjudicate the rights of all parties to the instant litigation with respect to the issues raised by this Complaint.

## IV.    FACTUAL ALLEGATIONS

17.    El Rio Sol is in the development phase of constructing a 500 MW alternating current transmission line that will connect renewable energy producers in New Mexico to consumers in central Arizona and beyond.

18.    El Rio Sol and its predecessor in interest, SunZia, have worked to secure easement agreements with property owners whose lands lie along the approximately 550-mile-long route for the transmission line.

19.    Once completed, SunZia will own and operate the first transmission line ("Line 1"), while El Rio Sol will own and operate the second transmission line ("Line 2").

20.    El Rio Sol's total anticipated direct expenditures on Line 2 are projected at $2,366,000,000. *See* Economic and Fiscal Impacts Analysis Executive Summary, attached hereto as **Exhibit A**, at 4.

### A.    Letter Agreement and Construction Agreement

21.    On March 17, 2020, Sunzia acquired rights to one or more easements (the "Easements") across two particular tracts of land (the "River Tracts" and the "Sleeping Indian Tracts"). *See* "Letter Agreement", a true and accurate copy of which is attached hereto as **Exhibit B**, at 1. **Exhibit B** omits the referenced WS Construction Agreement; El Rio Sol will separately request to file the WS Construction Agreement under seal because it contains commercially sensitive information.

22.    In March 2020, SunZia, Farm Water, LLC ("Farm Water"), Sleeping Indian Ranch, Red Doc, Adolfo Sanchez, and Christina Sanchez (joining pro forma) entered into a Letter Agreement confirming that

> SunZia or its successors will enter into a construction agreement . . . with Farm Water in form and substance the same as

the WS Construction Agreement to perform work and improvements . . . ***to the extent and if and as required to be performed*** on the River Tracts and the Sleeping Indian Tracts, as applicable, for the Easements.

*Id.* (emphasis added).

23.     The Letter Agreement expressly stated that the work and improvements required under the construction agreement would include "only the Work necessary for the Easements to support construction of the SunZia facilities . . . (any prior work accomplished by . . . SunZia or their successors would not be repeated, unless necessary for the Easements or construction of the SunZia facilities)." *Id.* at 1–2.

24.     As set forth above, the Letter Agreement is silent as to when the construction agreement must be executed, providing only that SunZia or its successors "will enter" into a construction agreement. *Id.* at 1.

25.     The Letter Agreement provides that the price for the construction agreement will be determined as follows:

The unit pricing under the WS Construction Agreement will be adjusted as of the effective date of the SunZia Construction Agreement for any percentage increase in the Consumer Price Index reported for the month prior to the effective date of the WS Construction Agreement and as reported for the month prior to the effective date of the SunZia Construction Agreement . . . .

*Id.*

26.     The WS Construction Agreement provides unit pricing at Exhibit B-1 attached thereto.

### B.     April Demand Letter

27.     On February 5, 2024, SunZia assigned to El Rio Sol all of its rights, duties, and obligations relating to Line 2 arising under or contained in the Letter Agreement. *See* Assignment of Letter Agreement, attached hereto as **Exhibit C**.

28.     On April 18, 2025, El Rio Sol received correspondence (the "April Demand Letter") from counsel for Defendants Adolfo Sanchez, Christina Sanchez, Red Doc, and Sleeping Indian Ranch stating that El Rio Sol had "failed and refused to execute" a construction contract for construction of "easement access facilities" for Line 2. *See* April Demand Letter, a true and accurate copy of which is attached hereto as **Exhibit D**, at 1–2.

29.     Although dated April 7, 2025, El Rio Sol did not receive the April Demand Letter under April 18, 2025. *Id.* at 1.

30.     The April Demand Letter demanded that El Rio Sol "immediately enter into a construction contract for the construction of access facilities . . . in the amount of $9,750,00[0].00." *Id.* at 2.

31.     According to the April Demand Letter, if El Rio Sol has not entered into the demanded $9.75-million-dollar contract by May 10, 2025, and paid one half of the amount demanded ($4,875,000.00) by that date, then Defendants Adolfo Sanchez, Christina Sanchez, Red Doc, and Sleeping Indian Ranch will file suit to "stop any further development . . . , seek breach of contract damages and seek cancellation of the easements assigned to El Rio Sol." *Id.* at 2–3.

### C.     The River Tracts Easement Agreement

32.     On March 17, 2020, grantors Adolfo Sanchez, Red Doc, and Christina Sanchez (joining pro forma), granted SunZia that certain Grant of Easement Agreement for Line 2 (the "River Tracts Easement Agreement"). *See* River Tracts Easement Agreement, a true and accurate copy of which is attached as **Exhibit E**.

33.     The express purpose of the River Tracts Easement Agreement was to grant the right to construct and operate a high-voltage transmission line and "all necessary facilities for the

transmission of electric power and energy and for communications . . . associated therewith." *Id.*
¶ 4.

34.    The terms of the River Tracts Easement Agreement describe the interest granted as
"permanent, perpetual and a covenant running with the real property," which binds "without
limitation all heirs, representatives, successors and/or assigns of each Grantor." *Id.* at 1–2.

35.    The River Tracts Easement Agreement expressly allowed SunZia the unrestricted
right to "sell, assign, mortgage, convey, contribute, lease or otherwise transfer all or any rights"
under the River Tracts Easement Agreement to another party, provided that the assignee expressly
agreed to assume all of the terms and conditions of the agreement. *Id.* ¶ 3.

36.    Paragraph 13 of the River Tracts Easement Agreement states in relevant part:

> Grantee shall construct, maintain and operate the Facilities within
> the Easement ROW . . . . If (i) the Facilities are not constructed
> within three (3) years after the recording date of this Easement, or
> (ii) after construction, the Facilities within the Easement ROW are
> "Abandoned" by Grantee, Grantor shall have the right to provide
> written notice to Grantee of Grantor's intent to terminate the
> Easement. The term "Abandoned" as used in the preceding sentence
> means the Facilities constructed on the Easement ROW have not
> been operated by Grantee for a period of three (3) consecutive years,
> and Grantee did not use the Easement ROW for the Easement
> Purpose during such three (3) year period; provided, however, that
> no period of involuntary non-use (e.g., periods where, due to some
> occurrence beyond the control of Grantee, such as an Act of God or
> protracted litigation or similar situation) will be included in
> calculating any consecutive period of non-use hereunder. Upon
> receipt of such written notice, Grantee shall have a period of two (2)
> years to begin construction of the Facilities or recommence
> operation or use of the Facilities, as applicable, and in the event
> Grantee fails to do so within such two (2) year period, Grantor shall
> have the right to terminate the Easement . . . .

*Id.* ¶ 13.

37.    Pursuant to Paragraph 13 of the River Tracts Easement, no notice of abandonment
may be issued until at least three years after the recording date of the River Tracts Easement.

38.     Pursuant to Paragraph 13 of the River Tracts Easements, Grantee shall have two years after proper notice is given "to begin construction of the Facilities or recommence operation or use of the Facilities" prior to Grantor having a right to terminate.

39.     On February 2, 2024, SunZia recorded the River Tracts Easement Agreement in Valencia County as Instrument Number 202401085. *Id.* at 1.

40.     On February 5, 2024, SunZia assigned all of its rights and obligations under the River Tracts Easement Agreement to El Rio Sol. *See* Assignment of Grant of Easement (Transmission Line 2 – River Tracts), a true and accurate copy of which is attached as **Exhibit F**.

41.     On the same day, SunZia and El Rio Sol recorded the assignment in Valencia County as Instrument Number 202401127. *Id.*

### D.     The Sleeping Indian Tracts Easement Agreement

42.     On March 17, 2020, grantor Sleeping Indian Ranch granted SunZia that certain Grant of Easement Agreement for Line 2 (the "Sleeping Indian Tracts Easement Agreement") on a different parcel of land. *See* Sleeping Indian Tracts Easement Agreement, a true and accurate copy of which is attached as **Exhibit G**.

43.     The Sleeping Indian Tracts Easement Agreement granted SunZia the right to construct and operate a high-voltage transmission line "and all necessary facilities for the transmission of electric power and energy and for communications . . . associated therewith." *Id.* ¶ 4.

44.     The Sleeping Indian Tracts Easement Agreement expressly allowed SunZia the unrestricted right to "sell, assign, mortgage, convey, contribute, lease or otherwise transfer all or any rights" under the easement to another party, provided that the assignee expressly agreed to assume all of the terms and conditions of the agreement. *Id.* ¶ 3.

45. Paragraph 13 of the Sleeping Indian Tracts Easement Agreement contained language identical to Paragraph 13 of the River Tracts Easement Agreement, *supra*. *Compare* Exh. E ¶ 13 *with* Exh. G ¶ 13.

46. Pursuant to Paragraph 13 of the Sleeping Indian Tracts Easement, no notice of abandonment may be issued until at least three years after the recording date of the Sleeping Indian Tracts Easement.

47. Pursuant to Paragraph 13 of the Sleeping Indian Tracts Easements, Grantee shall have two years after proper notice is given "to begin construction of the Facilities or recommence operation or use of the Facilities" prior to Grantor having a right to terminate.

48. On February 2, 2024, SunZia recorded the Sleeping Indian Tracts Easement Agreement in Socorro County as Instrument Number 20240301. *See* Exh. G, at 1.

49. On February 5, 2024, SunZia assigned all of its rights and obligations under the Sleeping Indian Tracts Easement Agreement to El Rio Sol. *See* Assignment of Grant of Easement (Transmission Line 2 – Sleeping Indian Tracts), a true and accurate copy of which is attached as **Exhibit H**.

50. On the same day, SunZia and El Rio Sol recorded the assignment as to the Sleeping Indian Tracts in Socorro County as Instrument Number 20240310. *Id.*

### E.    Change of Ownership

51. On March 4, 2022, Adolfo Sanchez conveyed his interest in certain River Tracts to Sanctus by Warranty Deeds, recorded as Document Nos. 202202993 and 202202995 in Valencia County, New Mexico.

52.     At the time Adolfo Sanchez conveyed his interest in certain River Tracts to Sanctus, Sanctus had actual knowledge of the unrecorded River Tracts Easement Agreement, which explicitly runs with the land and applies to any successors or assigns of Mr. Sanchez.

53.     Sanctus is, therefore, bound by the provisions of the River Tracts Easement Agreement.

### F.     Transfer in Violation of Easement

54.     Red Doc has received valuable consideration in excess of $75,000 in connection with the development of the transmission line over the River Tracts.

55.     Upon information and belief, on December 19, 2023, Red Doc obtained a loan from the Bank of Jackson Hole in the sum of $14,502,695.00 (the "Bank of Jackson Hole Loan").

56.     As security for the Bank of Jackson Hole Loan, the Bank of Jackson Hole received a lien on portions of the River Tracts, pursuant to a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Mortgage").

57.     Some portions of the River Tracts subject to the Mortgage were also subject to the as yet unrecorded River Tracts Easement Agreement.

58.     The Mortgage was recorded on December 27, 2023, as Instrument No. 202314543 in Valencia County, New Mexico—over one month before the River Tracts Easement Agreement was recorded on February 2, 2024.

59.     To clear up uncertainty regarding priority of interests in the River Tracts, El Rio Sol sent a letter to Red Doc on August 26, 2024, requesting that it forward the enclosed Subordination, Nondisturbance and Attornment Agreement ("SNDA") to the Bank of Jackson Hole for execution. *See* August 26, 2024, Letter from Modrall Sperling to Red Doc Land LLC, a true and accurate copy of which is attached as **Exhibit I**.

60.    Red Doc did not respond to the request to execute an SNDA.

61.    If Red Doc defaults on the Bank of Jackson Hole Loan, the bank could foreclose on the River Tracts, wiping out El Rio Sol's easement and jeopardizing the over-two-billion-dollar transmission line project.

### G.    March Demand Letters

62.    On March 27, 2025, counsel for Defendants sent to El Rio Sol two substantially identical letters (the "March Demand Letters")—one regarding the River Tracts Easement Agreement and the other regarding the Sleeping Indian Tracts Easement Agreement. *See* March Demand Letters, true and accurate copies of which are attached as **Exhibit J**.

63.    The March Demand Letters noted that the two easement agreements had effective dates of March 17, 2020 but were not recorded until February 5, 2024. *Id.* at 1–4.

64.    The Letters cited Paragraph 13 of each easement agreement and excerpted the following language: "If ([i]) the Facilities are not constructed within (3) three years after the recording date of this Easement[,] . . . Grantor shall have the right to provide written notice to Grantee of Grantor's intention to terminate this Easement." *Id.* at 2, 4.

65.    The Letters asserted that, regarding Paragraph 13, Defendants "understand 'construction' to mean the industry-wide definition of constructed and operational/commissioned (ECx)." *Id.*

66.    The Letters concluded that, in light of Defendants' interpretation of "constructed," the Letters should be considered "as Notice of Grantors' intention to terminate the Easement in the event the Facilities referenced thereunder are not constructed within three years" of February 2, 2024. *Id.*

## V.     COUNT I – DECLARATORY JUDGMENTS

67.     Plaintiff El Rio Sol incorporates by reference the foregoing allegations as though fully set forth herein.

68.     An actual controversy exists as to when the Letter Agreement requires El Rio Sol to execute a construction agreement.

69.     El Rio Sol maintains that a construction agreement is required only prior to the commencement of work on the land subject to the applicable easement.

70.     An actual controversy exists as to whether the Letter Agreement requires El Rio Sol to pay for completed work on the transmission line or only for future work on land subject to the applicable easement with a price calculated only based on the units necessary for future work.

71.     El Rio Sol maintains that a construction agreement would only require payment for future work on land subject to the applicable easement with the price fixed by the unit.

72.     An actual controversy exists as to whether termination or breach of the Letter Agreement constitutes a breach of the River Tracts or Sleeping Indian Tracts Easement Agreements entitling Defendants to terminate either such easement.

73.     El Rio Sol maintains that any termination or breach of the Letter Agreement is not a breach of the River Tracts or Sleeping Indian Tracts Easement Agreements and does not entitle Defendants to terminate either such easement.

74.     An actual controversy exists as to whether the term "constructed," as used in Paragraph 13 of the River Tracts or Sleeping Indian Tracts Easement Agreements, includes the requirement that the Facilities be fully operational and commissioned.

75.    El Rio Sol maintains that "constructed" as used in Paragraph 13 of the River Tracts or Sleeping Indian Tracts Easement Agreements does not require that the Facilities be fully operational and commissioned.

76.    An actual controversy exists as to when Defendants have the right under either the River Tracts or Sleeping Indian Tracts Easement Agreements to provide written notice of their intent to terminate if El Rio Sol does not construct the Facilities.

77.    El Rio Sol maintains that if El Rio Sol does not construct the Facilities, Defendants do not have the right under either the River Tracts or Sleeping Indian Tracts Easement Agreements to provide written notice of their intent to terminate until February 2027 at the earliest.

78.    A declaratory judgment of this Court will serve to establish the respective rights and obligations of El Rio Sol and Defendants and terminate the uncertainty and controversy that exist.

79.    Pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, El Rio Sol is entitled to an order declaring the following:

a.    that the Letter Agreement does not require El Rio Sol to execute a construction agreement by the date demanded in the April Demand Letter and does not require El Rio Sol to pay for prior work unless that work is necessary for the Easements or construction of Line 2;

b.    that any construction agreement executed pursuant to the Letter Agreement requires payment only for future work on land subject to the applicable easement;

c.    that any termination or breach of the Letter Agreement is not a breach of the River Tracts or Sleeping Indian Tracts Easements and does not entitle Defendants to terminate either such easement;

d. that "constructed" as used in Paragraph 13 of the River Tracts or Sleeping Indian Tracts Easement Agreements does not require that the Facilities be fully operational and commissioned;

e. that Defendants do not have the right under either the River Tracts or Sleeping Indian Tracts Easement Agreements to provide written notice of their intent to terminate until February 2027 at the earliest; and

f. that the Defendants may not terminate either the River Tracts or Sleeping Indian Tracts Easement Agreements until two years after proper notice is provided at the earliest.

## VI.   COUNT II – BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

80.   Plaintiff El Rio Sol incorporates by reference the foregoing allegations as though fully set forth herein.

81.   The River Tracts Easement Agreement and subsequent assignment from SunZia to El Rio Sol constituted valid, enforceable contracts.

82.   Red Doc owed El Rio Sol the duty to deal fairly and in good faith by not interfering with the express purpose of the River Tracts Easement Agreement.

83.   Despite accepting valuable consideration in connection with the River Tracts Easement Agreement, Red Doc, in bad faith, sought to deprive El Rio Sol of its reasonable expectations under the contract.

84.   By mortgaging the property underlying the River Tracts Easement Agreement and refusing to cooperate with El Rio Sol's good-faith efforts to obtain an SNDA, Red Doc is jeopardizing completion of the transmission line, a massive infrastructure project that has been in development for nearly twenty years and is projected to cost $2.366 billion.

85.     Red Doc's breach of the duty of good faith and fair dealing caused El Rio Sol to suffer injuries and damages, which are ongoing.

## VII.   <u>REQUESTED RELIEF</u>

WHEREFORE, El Rio Sol respectfully requests the Court:

A.    Enter an Order declaring

    a. that the Letter Agreement does not require El Rio Sol to execute a construction agreement by the date demanded in the April Demand Letter and does not require El Rio Sol to pay for prior work unless that work is necessary for the Easements or construction of Line 2;

    b. that any construction agreement executed pursuant to the Letter Agreement requires payment only for future work on land subject to the applicable easement with the price fixed by the unit of future work required;

    c. that any termination or breach of the Letter Agreement is not a breach of the River Tracts or Sleeping Indian Tracts Easements and does not entitle Defendants to terminate either such easement;

    d. that "constructed" as used in Paragraph 13 of the River Tracts or Sleeping Indian Tracts Easement Agreements does not require that the Facilities be fully operational and commissioned; and

    e. that Defendants do not have the right under either the River Tracts or Sleeping Indian Tracts Easement Agreements to provide written notice of their intent to terminate until February 2027 at the earliest.

B.      Award El Rio Sol compensatory damages for the Defendants' breaches of the covenant of

good faith and fair dealing inherent within the River Tracts or Sleeping Indian Tracts

Easement Agreements in an amount not less than $14,502,695.00.

C.      Grant such other relief the Court deems just and proper.

MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.

By:     */s/ Spencer L. Edelman*
       Spencer L. Edelman
       Rob W. Curl
       Post Office Box 2168
       500 Fourth Street NW, Suite 1000
       Albuquerque, New Mexico 87103-2168
       Telephone: (505) 848-1800
       spencer.edelman@modrall.com
       robert.curl@modrall.com
       *Attorneys for El Rio Sol Transmission, LLC*

*Y:\dox\client\11560\0008\DRAFTS\W5346843.DOCX*